No. 12,041.

NELSON *v.* VAN SCHAACK AND COMPANY.
(286 Pac. 865)

Decided March 3, 1930. Rehearing denied April 21, 1930.

Mr. HENRY V. JOHNSON, Mr. WINTHROP BOSLEY, for plaintiff in error.

Messrs. LEWIS & GRANT, Mr. ROBERT L. STEARNS, Mr. F. W. SANBORN, JR., Mr. IRVING HALE, JR., for defendant in error.

*In Department.*

MR. JUSTICE ADAMS delivered the opinion of the court.

NELSON sued Van Schaack & Company, a corporation, hereinafter called the company, to enjoin foreclosure of a deed of trust and to recover damages in the sum of $18,000 for alleged fraudulent representations. The cause was tried to a jury, and at the close of plaintiff's evidence, defendant moved for judgment of nonsuit, which was granted. Nelson brings the cause here on writ of error to review the judgment.

The controversy grew out of a written contract between the parties, made in September, 1926, for the exchange of improved real estate all in the City and County of Denver. At that time, Nelson was and for about twenty-seven years had been engaged in the business of a contractor and builder in Denver. His building activities for about fifteen or twenty years prior to the time of the dispute, consisted in building houses all over the city for himself, and selling them, and also in work as a contractor for others. The company was engaged in the real estate, loan and insurance business in Denver, and Nelson had done business with the company for about three years, according to his testimony.

In September, 1926, Nelson owned three dwelling houses on lots in Brown's addition to Lake Park, in Denver, subject to certain encumbrances, and the company had a customer who owned a fourteen-house terrace on seven lots on Court place, in Clement's addition to the city of Denver. The terrace property was also encum-

bered. After preliminary negotiations, Nelson and the company entered into a written agreement for a trade, subject to the approval of the owner of the terrace, which was later obtained. Under the terms of the trade, there was, among other things, a mutual adjustment of the encumbrances on the respective properties. One of the considerations was that Nelson assumed a mortgage of $18,000 on the terrace. Deeds were exchanged and the transaction was completed. Thereafter, Nelson put another trust deed for $1,600 on the terrace, but afterwards defaulted in the performance of its conditions, which resulted in foreclosure proceedings. Nelson thereupon sought to enjoin the foreclosure, and to recover damages for alleged fraudulent representations by the company, principally as to the value of the terrace. Nelson abandoned his suit to enjoin the foreclosure, but continues to prosecute his claim for $18,000 damages.

■ 1. The principal reason why the trial court granted a nonsuit was on account of plaintiff's failure to prove his reliance on defendant's alleged representations. Other reasons for granting the motion were indicated, but this alone is enough.

This court has too often discussed the necessary elements that go to make up an action in deceit to warrant a review of the cases. See *Kilpatrick v. Miller*, 55 Colo. 419, 422, 135 Pac. 780. The absence in plea or proof of any of the necessary ingredients is fatal to an action for fraudulent representation. *McNulty v. Durham*, 63 Colo. 354, 361, 167 Pac. 773.

■ 2. One of the requirements is that plaintiff must establish his reliance on such representations. "One cannot secure redress for fraud where he acted in reliance upon his own knowledge or judgment based upon independent investigation." 26 C. J., page 1162, §75; *Moore v. Carrick*, 26 Colo. App. 97, 140 Pac. 485. This is the long established American and English rule, fortified by decisions of the Supreme Court of the United States, and other federal and state courts, for, "Obviously there can

be no recovery if the investigation revealed the true facts so that if the representee was deceived at all he in effect deceived himself." 26 C. J., page 1163, §75.

■ 3. Testimony which showed that plaintiff did not rely on defendant's alleged representations came from plaintiff's own lips, in spite of his efforts to have it appear otherwise, and his actions spoke even louder than his words. The terrace was not the only trade offered Nelson by the company. Nelson rejected another offer, perhaps wisely, but his own testimony demonstrates conclusively that he was not at all satisfied to take the word of the company, and that he was actively resourceful in his own behalf. He admitted that before trading he had examined the terrace for himself; also that he had conferred with another Denver realtor as to the desirability of the proposition, and talked about it with different friends. What they did or did not tell him is of little consequence here. It is the fact that he consulted with them and made a personal examination that removes the credence that otherwise might be given to his allegation of reliance on defendant's representations. We fear also that counsel for plaintiff seriously underestimates his client's background of personal knowledge, acquired as a contractor and builder in Denver for so many years, and plaintiff's long experience in the real estate values of the city, supplemented by his personal examination of the terrace and his consultation with others. There was no fiduciary relationship existing between him and the company. He cannot recover.

■ 4. Another claim made by plaintiff is that defendant falsely assured him that defendant would sell the terrace property at an increased price. We have held before, and now repeat, that such a statement if made, at best was only a breach of contract, and that an allegation of unfulfilled promises has no place in a complaint for damages by deceit. The action should be upon the promise. *Hart v. Zaitz*, 72 Colo. 315, 327, 211 Pac. 391.

■ 5. The only significance of the $1,600 trust deed,

as far as this case is concerned, is that it seems to mark the time when plaintiff became so financially embarrassed that it made him restless and dissatisfied with his voluntary trade, and determined to find a way out if possible. Undoubtedly, he felt that he made a bad bargain, but even if he did, courts do not open their doors to those who are suffering merely from their own bad bargains, not induced by any misrepresentations. *Gertner v. Limon National Bank,* 82 Colo. 13, 41, 257 Pac. 247.

The question of inducement by misrepresentations has already been discussed. The impossibility of courts attempting to act as business clearing houses for the readjustment of legitimate profits and losses occurring in the marts of trade and commerce, is obvious at a glance. To attempt it, especially on behalf of such a well-informed plaintiff, would be an unwarranted interference with the freedom of action of business men in their private affairs. If plaintiff can be made whole for his losses under the circumstances of this case, it would be equally proper for us to compel him to surrender his profits if the wheel of fortune had turned the other way. We cannot do either.

6. Other reasons for affirming the judgment might be given, but those stated are sufficient. The record is voluminous, unnecessarily so, in fact, but it has nevertheless been fully considered. The briefs are exhaustive and have been of great assistance, but we must agree with the trial court that the action was but an ill-concealed attempt to evade a foreclosure suit. Plaintiff conclusively disproved his own case and the nonsuit was rightly granted.

Judgment affirmed.

MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE CAMPBELL and MR. JUSTICE ALTER concur.